# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHANIE KAPLAN,<br><br>    Plaintiff,<br><br>v.<br><br>KIMBERLY JEWETT,<br><br>    Defendant. | Case No. 15-cv-3392<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie Kaplan ("Plaintiff") alleges that, beginning in the fall of 2014, defendant Kimberly Jewett ("Defendant") engaged in an extra-marital affair with Plaintiff's husband, Dr. Keith Kaplan ("Dr. Kaplan"). First Am. Compl. [8]. On April 16, 2015, Plaintiff filed suit in this Court under the Illinois Alienation of Affections Act, 740 ILCS 5/1 *et seq.*, and Criminal Conversation Act, 740 ILCS 5/1 *et seq.*[1] *Id.* On November 2, 2016, Defendant filed a motion to dismiss Plaintiff's case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. Def.'s Mot. Dismiss [44]. Defendant argues that the amount in controversy does not exceed the $75,000 threshold required by 28 U.S.C. § 1332. *Id.* For the reasons explained below, Defendant's motion is granted in part and denied in part.

---

[1] The State of Illinois repealed both statutes on July 21, 2015. Ill. Public Act 99-90. The repeals, however, did not take effect until January 1, 2016 and were not made retroactive. As a result, the repeals do not impact the present litigation. *Id.*

1

I.  **Background**

Plaintiff alleges the following facts in her First Amended Complaint. Plaintiff and Dr. Kaplan, both residents of North Carolina, have been married for over nineteen years. First Am. Compl. [8] ¶ 5. Dr. Kaplan works as a General Pathologist for the Veterans Health Administration, serves as Chief Medical Officer for a private company, and writes for an internet blog on digital pathology. *Id.* ¶¶ 12, 54. The couple has one child together. *Id.* ¶ 6.

Sometime before the fall of 2014, Dr. Kaplan began communicating with Defendant, a patient advocate residing in Illinois, via telephone and social media. *Id.* ¶¶ 10, 60. The pair eventually met in person in September 2014, when Dr. Kaplan attended a work meeting in Chicago. *Id.* ¶ 8. The two reunited in October 2014 at a conference in San Francisco, and again in Chicago in early November 2014. *Id.* ¶¶ 14, 16-18.

On November 23, 2014, Dr. Kaplan announced his separation from Plaintiff and vacated their marital residence. *Id.* ¶¶ 20-21. In early December 2014, Dr. Kaplan took Defendant on a trip to London and Paris. *Id.* ¶¶ 23-24. Although Plaintiff and Dr. Kaplan attempted a brief reconciliation in mid-December 2014, Dr. Kaplan informed Plaintiff around Christmas that he was in a relationship with Defendant. *Id.* ¶¶ 30-32. Dr. Kaplan ceased financial support of Plaintiff and their child in January 2015. *Id.* ¶ 57.

Plaintiff claims that, throughout the course of their relationship, Defendant engaged in conduct with Dr. Kaplan, including sexual intercourse, "designed to

entice" Dr. Kaplan's affections "to depart from Plaintiff." *Id.* ¶ 69. Plaintiff alleges that Defendant ultimately undermined Dr. Kaplan's love for Plaintiff and that, as a result, Plaintiff has suffered actual damages. *Id.* ¶¶ 45, 50, 53. Specifically, Plaintiff alleges that she suffered the loss of: (1) Dr. Kaplan's income and contribution to household tasks; (2) large amounts of marital money that Dr. Kaplan spent on Defendant (including travel, lodging, clothing, food, and gifts); and (3) marital income that Defendant misappropriated from Dr. Kaplan's business ventures. *Id.* ¶¶ 55-56, 58-67. Plaintiff contends that these damages exceed the $75,000 jurisdictional threshold. *Id.* ¶¶ 67, 86.

## II. Legal Standard

### A. Amount in Controversy

Federal district courts are courts of limited jurisdiction and possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Teamsters Nat. Auto. Transporters Indus. Negotiating Comm. v. Troha*, 328 F.3d 325, 327 (7th Cir. 2003). Under 28 U.S.C. § 1332, district courts possess original jurisdiction in civil actions between citizens of different states[2] "where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." The amount in controversy is "not the amount sought by the plaintiff but the amount at stake to either party to the suit." *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) ("[T]he

---

[2] Defendant does not contest that the parties satisfy 28 U.S.C. § 1332's diversity requirement.

3

jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief.").

In all cases, "the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). When the amount in controversy is uncontested, the Court "will accept the plaintiff's good faith allegation of the amount in controversy unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (internal quotations omitted). Where, however, "the defendant challenges the plaintiff's allegation of the amount in controversy, the plaintiff must support [her] assertion with competent proof" by a preponderance of the evidence. *Id*. (internal quotations omitted); *Travelers*, 689 F.3d at 722 (the proponent of jurisdiction "may be called on to prove facts that determine the amount in controversy, and must do so by a preponderance of the evidence").

To satisfy this burden, a party must do more than "point to the theoretical availability of certain categories of damages." *Am. Bankers Life Assur. of Florida v. Evans,* 319 F.3d 907, 909 (7th Cir. 2003). Jurisdiction, of course, "is a legal conclusion, a *consequence* of facts rather than a provable 'fact.'" *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (emphasis in original). Thus, "what the proponent of jurisdiction must 'prove' is contested factual assertions" supported by "admissible evidence." *Id*. at 541-43; *see also McMillian,* 567 F.3d at

4

845 (dismissing case for lack of subject matter jurisdiction where "plaintiffs rest[ed] their entire argument concerning amount in controversy on the allegations contained in their complaint" and did not submit "competent proof").

Although the proponent of jurisdiction "may be called on to prove facts that determine the amount in controversy," once those facts have been established, "the proponent's estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold." *Meridian*, 441 F.3d at 541. The proponent "does not have to establish that it is likely that plaintiff will prevail or, if she does, that she will obtain a judgment exceeding the amount-in-controversy requirement." *Kincaid v. Menard, Inc.*, No. 13-cv-7279, 2014 WL 1715503, at *1 (N.D. Ill. Apr. 30, 2014) (citing *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011)). The burden, rather, "is to show what the plaintiff hopes to get out of the litigation; if this amount exceeds the jurisdictional threshold, the case proceeds in federal court unless a rule of law will keep the award under the threshold." *Id.* (citing *Rising–Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006)).

### B. Alienation of Affections and Criminal Conversation in Illinois

Against this jurisdictional backdrop, the Court must also apply additional considerations unique to Plaintiff's state law claims. The causes of action at issue here—alienation of affections and criminal conversation—"arose in common law and, along with breach of contract to marry, have been treated indistinguishably, at least on questions of statutory exclusions of certain types of damages." *Murphy v. Colson*, 999 N.E.2d 372, 375 (Ill. App. Ct. 2013). Concerned that the torts had been

5

"subjected to grave abuses" and used "as an instrument for blackmail," the Illinois legislature initially abolished both causes of action in 1935. *See* 740 ILCS 5/1; *Murphy*, 999 N.E.2d at 376. In 1946, however, the Illinois Supreme Court declared the repeal unconstitutional in *Heck v. Schupp*, 68 N.E.2d 464, 466 (1946) (finding that repeal violated the Illinois Constitution of 1870, which provided that "every person ought to find a certain remedy in the laws for all injury and wrongs which he may receive in his person, property, or reputation.").

In 1947, "presumably in response to *Heck*," the Illinois legislature codified both torts in the Alienation of Affections Act, 740 ILCS 5/1 *et seq.*, and Criminal Conversation Act, 740 ILCS 5/1 *et seq.*, respectively. While the acts left both causes of action legally viable, they explicitly limited recovery to "actual damages"; no "punitive, exemplary, vindictive, or aggravated damages" were permitted. 740 ILCS 5/1-5/3; 740 ILCS 50/2. Furthermore, the plain language of the statutes placed additional limitations upon the *types* of actual damages to be considered:

> In determining the damages to be allowed in any action for alienation of affections, none of the following elements shall be considered: the wealth or position of defendant or the defendant's prospects of wealth or position; mental anguish suffered by plaintiff; any injury to plaintiff's feelings; shame, humiliation, sorrow or mortification suffered by plaintiff; defamation or injury to the good name or character of plaintiff or his or her spouse resulting from the alienation of affections complained of; or dishonor to plaintiff's family resulting from the alienation of affections.

740 ILCS 5/4. In other words, each act permitted recovery for *some* actual (*i.e.,* compensatory rather than punitive) damages, but neither act "guarantee[d]

6

compensation for *all* actual damages." *Murphy*, 999 N.E.2d at 377 (emphasis in original).

The constitutionality of the revised statutes was upheld in 1960, *see Siegall v. Solomon*, 166 N.E.2d 5, 6 (1960), but alienation of affections actions continued to be subjected "to close and strict judicial scrutiny." *Coulter v. Renshaw*, 418 N.E.2d 489, 490 (Ill. App. Ct. 1981). Over time, Illinois appellate courts eventually took "a sharp pencil" to damage claims, *Costello v. Hansen*, No. 02-cv-8318, 2002 WL 31626704, at *2 (N.D. Ill. Nov. 20, 2002), and further limited the damage requirement "beyond that contemplated by the statute." *Wheeler v. Fox*, 307 N.E.2d 633, 636 (Ill. App. Ct. 1974). In 1970, for example, an Illinois appellate court held that damages for attorneys' fees from divorce and child custody proceedings were not recoverable. *Kniznik v. Quick*, 264 N.E.2d 707, 710-11 (Ill. App. Ct. 1970). In 1974, a court excluded damages for mental illness and lost occupational earnings. *Wheeler,* 307 N.E.2d at 636.

Finally, in 1980, a court disqualified damages for loss of consortium, including the elements of "companionship, felicity, and sexual intercourse." *Coulter v. Renshaw,* 418 N.E.2d 489, 492 (Ill. App. Ct. 1981) ("We think the elements of loss of consortium are the kinds of indefinitely measured damages for which the legislature intended to preclude recovery when it adopted the Alienation of Affections Act."). The *Coulter* court also ruled another category of damages—the loss of the spouse's housekeeping services—not recoverable for a reason *other than* the actual damages limitation: the plaintiff's failure to adequately plead an actual

7

pecuniary loss. *Id.* ("[W]e hold that merely pleading loss of the spouse's services without an allegation of actual pecuniary loss is insufficient to establish actual damage."). These deficiencies notwithstanding, however, the *Coulter* court also held that, despite the historically "narrow construction" given to the term, a claimed loss of monthly spousal income "fulfill[ed] the requirement of actual damage." *Id.* According to the court, to hold otherwise would "be tantamount to abolishing the cause of action of alienation of affections." *Id.*

Recently, Illinois appellate courts have affirmed the "body of law on what types of damages are not recoverable," *see Murphy*, 999 N.E.2d at 379 (citing *Kniznik*, *Wheeler*, and *Coulter*), but also declined to disturb *Coulter's* holding that the loss of a spouse's income constitutes actual damages. *See, e.g. id.* (citing *Coulter* without criticism while affirming constitutionality of statutory exclusions); *Hargan v. Sw. Elec. Co-op., Inc.*, 725 N.E.2d 807, 809 (Ill. App. Ct. 2000) ("In this case, [the plaintiff] clearly alleges that . . . he sustained actual damages in the form of [his wife's] lost wages."). Federal courts in this district have followed suit. *See, e.g. Roberts v. Zemen*, 191 F.R.D. 575, 576 (N.D. Ill. 2000) ("An allegation of loss of the estranged spouse's income will fulfill the pleading requirement of actual damages" where plaintiff alleges date that monetary deprivation began).

**III. Discussion**

The general jurisdictional tenets discussed above, combined with the heightened scrutiny associated with alienation of affections claims, means that Plaintiff, as the proponent of federal jurisdiction, must not only satisfy her burden

8

of proof regarding the amount in controversy, but must do so within the "very narrow limits both in pleading and proof" imposed by her state law causes of action. *See Coulter*, 418 N.E.2d at 490. With this legal framework in mind, the Court turns to Plaintiff's allegations.

To begin, certain injuries claimed in Plaintiff's First Amended Complaint do not sufficiently establish actual damages. As in *Coulter*, Plaintiff claims that she has suffered the loss Dr. Kaplan's contribution to household tasks. First Am. Compl. [8] ¶¶ 64-66. Plaintiff fails, however, to plead an actual pecuniary loss associated with this grievance; rather, Plaintiff's claim is merely stated in "conclusionary terms." *See Wheeler*, 307 N.E.2d at 636; First Am. Compl. [8] ¶ 66 ("The replacement cost of . . . household activities constitutes actual damages to Plaintiff."). This is not enough. *See Coulter*, 418 N.E.2d at 491 ("[M]erely pleading loss of the spouse's services without an allegation of actual pecuniary loss is insufficient to establish actual damage."). Therefore, Plaintiff's First Amended Complaint [8] is dismissed to the extent it seeks damages for loss of household services.

Other damages claimed by Plaintiff (namely, marital funds Dr. Kaplan spent on Defendant and Defendant's misappropriations of Dr. Kaplan's business ventures), lack supporting evidence in Plaintiff's response to Defendant's Motion to Dismiss. As a result, they add nothing to Plaintiff's amount in controversy calculation. *See Am. Bankers Life Assur. of Florida v. Evans,* 319 F.3d 907, 909 (7th Cir. 2003) (to satisfy the jurisdictional threshold, a party must do more than "point

9

to the theoretical availability of certain categories of damages"); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-43 (7th Cir. 2006) (proponent of jurisdiction must prove "contested factual assertions" supported by "competent proof").

Plaintiff does, however, allege that she suffered "the loss of [Dr. Kaplan's] income, both past and future." First Am. Compl. [8] ¶ 53. She further claims that her husband "earns approximately $640,000 per year," and that her husband ceased supporting Plaintiff and their child in January 2015. *Id.* ¶¶ 6, 57. These allegations meet the jurisdictional threshold, and are sufficient to satisfy the requirements for alienation of affections claims. *See, e.g. Roberts*, 191 F.R.D. at 576; *Coulter*, 418 N.E.2d at 491; *Wheeler*, 307 N.E.2d at 636.

More importantly, Plaintiff supports her claim of lost spousal income with competent proof: a report from a North Carolina accounting firm retained to calculate the loss of financial support from Dr. Kaplan. *See* Pl.'s Resp. Mot. Dismiss [46] Ex. A. The report confirms, based upon deposits to Dr. Kaplan's bank account, that Dr. Kaplan receives income from practicing as a full-time pathologist and operating an internet blog, and further itemizes Dr. Kaplan's take-home pay throughout 2015. *Id.* Specifically, the report reveals that, in 2015 alone, Dr. Kaplan received $19,848.08 in monthly salary deposits, for an annual total of $238,176.93. Pl.'s Resp. Mot. Dismiss [46] Ex. A at 10. Furthermore, Dr. Kaplan netted between $12,865.03 and $59,425.17 each month from his blog, for an additional annual total of $361,906.13. *Id.* Such income, from either source, is well above the $75,000 jurisdictional threshold, even if additional deductions for social

security, Medicare, and Dr. Kaplan's individual consumption are taken into account.[3]

Defendant's critiques of this evidence are unpersuasive, at least at this stage of the proceedings. Defendant challenges the true extent of Dr. Kaplan's purported income by arguing that Dr. Kaplan "has been fired or allowed to resign from each job he has held between 2006 and 2014." Def.'s Mot. Dismiss [44] 10; Def.'s Reply [47] 8. Even if true, however, this claim does little to undermine Plaintiff's report of Dr. Kaplan's income in 2015—the year in which, according to Plaintiff, Dr. Kaplan ceased financial support for his family. First Am. Compl. [8] ¶ 57.

Nevertheless, Defendant believes Dr. Kaplan's employment history weakens Plaintiff's assumption that Dr. Kaplan will receive steady income in the future. Def.'s Reply [47] 7-8. But even if Defendant is correct, Dr. Kaplan's documented income in 2015 *alone* places the amount in controversy well above the jurisdictional threshold. Thus, the amount and likelihood of *future* income, though highly probative at trial, is largely irrelevant for the purposes of Defendant's motion.

Defendant also submits evidence that, since June 2015, Dr. Kaplan has been under a court order to pay Plaintiff $21,250 per month in maintenance and $5,500 per month in child support. *See* Def.'s Mot. Dismiss [44] Ex. 7 ¶ 12. This declaration, however, does not address the period between January 2015 (the month Plaintiff claims Dr. Kaplan ceased financial support) and June 2015, during which Dr. Kaplan earned $99,240.40 in salary deposits and $203,304.26 in net blog

---

[3] Plaintiff's report calculates total combined deductions for social security, Medicare, and Dr. Kaplan's individual consumption to equal $65,448.95. Pl.'s Resp. Mot. Dismiss [46] Ex. A at 2.

income. *See* Pl.'s Resp. Def.'s Mot. Dismiss [46] Ex. A at 11. Moreover, even when the period beyond June 2015 is considered, the combined $26,750 in monthly maintenance and child support equals only a fraction of Dr. Kaplan's overall monthly earnings.[4]

Defendant further highlights the absence of any reported Illinois case granting monetary recovery for an alienation of affections claim. Def.'s Mot Dismiss [44] 6; Def.'s Reply [47] 8-9 (Plaintiff "fails to identify even one case awarding damages to an alienation-of-affection[s] or criminal conversation plaintiff under the statutes at issue here"). This argument misses the point. While it is true that Plaintiff may rely upon prior cases to support a claimed amount in controversy, *see McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 845 (7th Cir. 2009) (looking to "cases in which the plaintiffs had suffered similar injuries" and the jury awarded damages "in amounts that would satisfy the jurisdictional requirements"), case law provides only *one* means by which Plaintiff may satisfy her burden. It is by no means required where, as here, Plaintiff offers other forms of competent proof.

Finally, Defendant devotes substantial energy to attacking the causation element of Plaintiff's case. *See* Def.'s Mot. Dismiss [44] 7-9 ("[P]laintiff cannot show, as she must, that [Defendant] is responsible for any economic losses plaintiff may be experiencing. The marriage between [Plaintiff] and [Dr. Kaplan] was a complete train wreck before [Defendant] ever met [Dr. Kaplan]."); Def.'s Reply [47] 2-7 ("Dr.

---

[4] For example, according to Plaintiff's accounting report, Dr. Kaplan earned $44,314.33 in salary and net blog income in June 2015; $42,525.88 in July 2015; $34,526.84 in August 2015; $36,398.79 in September 2015; $67,238.35 in October 2015; $39,821.14 in November 2015; and $32,713.11 in December 2015.

12

Kaplan's income matters only if plaintiff can prove that [Defendant] was the proximate cause of plaintiff's alleged loss of access to that income."). To be sure, to win on her alienation of affections claim, Plaintiff must prove: (1) love and affection of the spouse for the plaintiff; (2) actual damages; and (3) overt acts, conduct, or enticement on the part of the defendant *causing* those affections to depart. *Coulter*, 418 N.E.2d at 490-91 (emphasis added). Defendant, however, confuses Plaintiff's burden of proof *at trial* with her burden in the face of an *amount-in-controversy challenge*. *See Johnson v. Wattenbarger,* 361 F.3d 991, 993 (7th Cir. 2004) ("A legal shortcoming does not equate to a jurisdictional shortfall."). At this stage, Plaintiff is merely required to prove facts that determine the amount in controversy; she need not establish a prima facie case. *See Kincaid v. Menard, Inc.*, No. 13-cv-7279, 2014 WL 1715503, at *1 (N.D. Ill. Apr. 30, 2014) (citing *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011)). In other words, although a jurisdictional challenge permits the Court to "look beyond the pleadings" to *particular portions* of Plaintiff's proof, it does not open the door to wholesale scrutiny of Plaintiff's case-in-chief. Such a comprehensive examination is beyond the scope of Rule 12(b)(2).

In short, the Court finds that Plaintiff has shown, by a preponderance of the evidence, that the amount in controversy surpasses the jurisdictional minimum. This ruling, of course, takes no position as to whether Plaintiff will ultimately prevail, or, if she does, whether she will obtain a judgment above (or even near) the amount in controversy threshold. Such a determination is rightfully reserved for a

later date.  At present, it is enough to say that Plaintiff has shown that the amount at stake exceeds $75,000.

## IV. Conclusion

Defendant's Motion to Dismiss [44] is granted in part and denied in part. Plaintiff's First Amended Complaint [8] is dismissed to the extent it seeks damages for loss of household services.  The remainder of Plaintiff's First Amended Complaint [8] stands.  Defendant is directed to file an answer or other responsive pleading within twenty-one days of the date of this Order.

Date:  January 19, 2017

ENTERED:

John Robert Blakey
United States District Judge